[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-11840

Non-Argument Calendar

_____

VEDA WHITE,

Plaintiff-Appellant

versus

EQUIFAX INFORMATION SERVICES, LLC,
a Georgia limited liability company,
TRANS UNION, LLC,
a Delaware limited liability company,

Defendants,

2                    Opinion of the Court                    21-11840

WELLS FARGO BANK, N.A.,

a foreign corporation,

                                                  Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-01870-LMM

_____

Before JORDAN, ROSENBAUM, and BRASHER, Circuit Judges.

PER CURIAM:

When Veda White checked her credit reports from Equifax and Trans Union on August 7, 2019, they noted that she disputed her Wells Fargo tradeline. She sent a letter to Equifax and Trans Union saying she no longer disputed the tradeline. Equifax and Trans Union forwarded that letter to Wells Fargo asking that Wells Fargo verify the dispute. Because Wells Fargo had not received any word from Ms. White saying she no longer disputed the tradeline, Wells Fargo's records indicated that the tradeline was still in dispute. Wells Fargo reported as much to Equifax and Trans Union, which left the dispute notation on Ms. White's credit reports. After seeing that the notation remained on her next credit reports, Ms. White filed a lawsuit against Wells Fargo, alleging that it

21-11840                Opinion of the Court                3

violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, by failing to investigate her dispute. The district court dismissed her suit for failure to state a claim. Because Wells Fargo satisfied its obligations under the FCRA, we affirm.

## I

On August 7, 2019, Ms. White obtained her Equifax and Trans Union credit reports and saw that Wells Fargo reported that her tradeline was in dispute. On February 27, 2020, she sent a letter to Equifax and Trans Union requesting that the credit reporting agencies (CRAs) remove the dispute notation on her credit report because the Wells Fargo tradeline was no longer in dispute.

The contents of that letter were not included in the complaint, nor did Ms. White attach the letter to her complaint. The letter is part of the record as an attachment to her response to Wells Fargo's motion to dismiss. An image of the letter is copied below:

4                    Opinion of the Court                    21-11840

Dear Whoever,

☒  There are things that do not belong on my credit report for the following below reason on the below accounts:

> - WELLS FARGO DLR SVC/, Date of Opening: May 07, 2016, Balance: $0; and
>
> -CREDIT MANAGEMENT, Original Creditor: COMCAST CABLE, Date of Opening: August 30, 2019, Balance: $470

☒ I no longer dispute the above accounts. Please remove all of the disputed comments from the above accounts.

Thank you.

*Veda White w permission*

Veda White

D.E. 15-3 at 1.[1]

Ms. White does not allege that she ever told Wells Fargo, directly, that she no longer disputed the tradeline. Her complaint says only that she sent the CRAs a letter stating that they were wrong in reporting that the Wells Fargo tradeline was in dispute.

---

[1] We may consider this letter as part of the pleadings without treating Wells Fargo's motion to dismiss as a motion for summary judgment. Not only did Ms. White submit the letter, but the letter "is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

Equifax and Trans Union forwarded Ms. White's "consumer dispute" to Wells Fargo.  D.E. 1 at ¶ 10.  Upon receiving it, Wells Fargo "verified" to the CRAs that, according to its records, Ms. White's tradeline was still disputed, meaning the CRAs' reports were accurate.  *Id.* at ¶ 12.

Ms. White obtained new credit reports on April 16, 2020, and they showed that the Wells Fargo tradeline was still disputed. On April 30, 2020, she filed a complaint in the federal district court for the Northern District of Georgia, alleging that Wells Fargo negligently or willfully failed to investigate her dispute and "failed to direct Equifax and Trans Union to remove the notation of account in dispute," in violation of its duties as a furnisher of information to CRAs under FCRA, 15 U.S.C. § 1681s-2(b). *Id.* at ¶ 17.

Wells Fargo moved to dismiss for failure to state a claim. The district court granted the motion, finding that Ms. White's letter to the CRAs about her desire to withdraw her dispute with Wells Fargo did not support a claim against Wells Fargo under FCRA.

## II

"We review de novo the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and construe all the allegations as true." *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1339 (11th Cir. 2017).  "A plaintiff must plausibly allege all the elements of the claim for relief. Conclusory allegations and legal conclusions are not sufficient; the plaintiff[ ] must

6                    Opinion of the Court                    21-11840

state a claim to relief that is plausible on its face." *Id.* at 1339–40 (citations and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III

Because Wells Fargo met its FCRA obligations, the district court properly dismissed Ms. White's complaint. The FCRA requires furnishers, like Wells Fargo, to investigate disputed information, including by reviewing "all relevant information provided by the [CRA] in connection with the dispute." 15 U.S.C. § 1681s-2(b)(1). We have said that "'reasonableness' is the touchstone for evaluating investigations under § 1681s-2(b))." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016). Whether a furnisher's investigation is reasonable depends in part on the documentation available to the furnisher. *Id.*

Ms. White does not plausibly allege that Wells Fargo failed to conduct a reasonable investigation in response to the materials she sent to the CRAs, which the CRAs then forwarded to Wells Fargo. Ms. White had previously disputed the Wells Fargo tradeline. She had not, however, resolved the dispute with Wells Fargo by the time she sent the letter to the CRAs stating that she no longer disputed the Wells Fargo tradeline. The plain import of the letter to the CRAs is that the CRAs' reports were inaccurate, not that Ms. White was thereby resolving (or attempting to resolve) a

21-11840              Opinion of the Court                    7

dispute with her bank, which was not even an addressee on the letter.

Ms. White argues that her "statement that she no longer disputed the Wells Fargo tradeline and wanted the inaccurate dispute remarks removed provided all the relevant information necessary for Wells Fargo to perform its investigation." Appellant's Br. at 7–8. But when the CRAs forwarded her letter, Wells Fargo reasonably understood it as a request by the CRAs to verify that their reporting about the status of Ms. White's account matched the status of Ms. White's account in the bank's official records. Faced with such a request, the reasonable thing for Wells Fargo to do, as a matter of law, was to check its official records. That, Ms. White admits, is what Wells Fargo did. Nothing more was required.

Perhaps Wells Fargo could have contacted Ms. White to ask whether she was, as an initial matter, attempting to resolve the underlying dispute with Wells Fargo through the CRAs as an intermediary, but that better practice is not what the FCRA requires. As the Seventh Circuit has held, "requiring a furnisher to automatically contact every consumer who disputes a debt would be terribly inefficient and such action is not mandated by FCRA." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005). What Ms. White wants Wells Fargo to do—either (1) to intuit that she no longer disputed the tradeline from her report to the CRAs or (2) to reach out to her directly to clarify and confirm that she no longer wished to dispute the tradeline—goes beyond what FCRA reasonableness requires.

On top of that, the letter Ms. White sent to the CRAs is far from clear. To start, the form letter is addressed to "[d]ear [w]hoever" and signed by "Veda White with permission." D.E. 15-3 at 1. More importantly, though, the letter is internally contradictory. The first part of the letter seems to dispute that certain "things . . . belong on [her] credit report" at all and then lists the Wells Fargo tradeline. *Id.* The second part says she "no longer dispute[s] the above accounts" and asked the CRAs to "remove all of the disputed comments from the above accounts." *Id.* The letter, on its face, fails to make anything clear to Wells Fargo, much less that she expected Wells Fargo to remove the dispute notation based on what she told the CRAs. *See, e.g.*, *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 947 (11th Cir. 2021) ("Even when a consumer has informed the agency about inaccurate information, there may be circumstances—say, when the consumer supplies insufficient detail—in which there is no jury question about the reasonableness of the agency's investigation or reinvestigation."). Ms. White could have written a better letter: one that made clear that she was attempting to revoke her dispute for the first time or, better yet, one addressed to the bank itself. But that is not the letter on which she premised her lawsuit.

## IV

We affirm the dismissal of Ms. White's complaint.

**AFFIRMED.**