[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-12322

Non-Argument Calendar

_____

SHAHRIAR "JAMES" EKBATANI,

SHAHRZAD EKBATANI,

as Trustee for Nobility Trust and Dignity Trust,

TERRENCE DIAZ,

Plaintiffs-Appellants,

*versus*

COMMUNITY CARE HEALTH NETWORK, LLC,

d.b.a. Matrix Medical Network,

FRAZIER MANAGEMENT, LLC,

d.b.a. Frazier Healthcare Partners,

FRAZIER HEALTHCARE VENTURES,

FRAZIER HEALTHCARE VII, L.P.,

FRAZIER HEALTHCARE VII-A, L.P.,

2                Opinion of the Court                21-12322

THE PROVIDENCE SERVICE CORPORATION,
a Delaware Corporation,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:20-cv-02224-PGB-DCI

_____

Before WILSON, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Shahriar Ekbatani and related parties appeal the district court's order dismissing their antitrust suit for lack of standing. Ekbatani and his co-plaintiffs sold their company, which we will call "HealthFair," to a buyer we will call "Matrix." Matrix allegedly reduced HealthFair's business output after the sale so that Health-Fair's services would not compete with Matrix's services. This reduction in output allegedly caused the sellers to lose a contractually obligated payment that was contingent on the company's post-sale performance. The sellers brought an action under Section 7 of the Clayton Act, 15 U.S.C. § 18, alleging that Matrix's reduced output violated the antitrust laws. Because the district court correctly concluded that the sellers lack antitrust standing, we affirm.

## I.

HealthFair and Matrix both provide risk adjustment services to payors in the American healthcare system. The sellers decided to sell their equity interests in HealthFair to Matrix. Under the terms of their agreement, the sellers received cash, shares in Matrix's parent holding company, and the promise of an "earnout" payment if HealthFair's profits reached a certain threshold over the following year.

After the acquisition, Matrix allegedly reduced the daily appointments to HealthFair's business, resulting in a significant drop in revenue. At the same time, Matrix increased prices for its own services. Matrix notified the sellers that it did not owe them an earnout payment because HealthFair's profits fell below the threshold stated in the contract.

The sellers sued Matrix and connected parties under Section 7 of the Clayton Act, 15 U.S.C. § 18, arguing that Matrix's conduct substantially lessened competition in the market. Matrix then filed a motion to dismiss for failure to state a claim, which the district court granted. The court concluded that the sellers lacked antitrust standing because they failed to allege an antitrust injury. The sellers timely appealed.

## II.

This Court reviews a district court's dismissal for lack of antitrust standing *de novo*. *Fla. Seed Co. v. Monsanto Co.*, 105 F.3d 1372, 1374 (11th Cir. 1997). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.

To determine whether a plaintiff has antitrust standing, we evaluate two elements. First the plaintiff must have "suffered an antitrust injury . . . . Second, the plaintiff must 'be an efficient enforcer of the antitrust laws.'" *Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1272–73 (11th Cir. 2015) (cleaned up) (quoting *Sunbeam Television Corp. v. Nielsen Media Rsch., Inc.,* 711 F.3d 1264, 1271 (11th Cir. 2013)). Because the district court dismissed for lack of antitrust injury alone and we believe that ruling is dispositive, we limit our discussion to that element.

"Antitrust injury is injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendant's acts unlawful." *Id.* at 1272 (cleaned up) (quoting *Palmyra Park Hosp., Inc. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291, 1299 (11th Cir. 2010)). Usually, an antitrust plaintiff can establish an antitrust injury because it participates as a buyer or seller in the

market in which the defendant has restrained competition. Here, however, the sellers are not participants in the market for healthcare risk adjustment services; they do not provide services in that market, and that they are not consumers in that market. They argue that they remain in the market by virtue of their rollover equity in Matrix's parent holding company. But they allege no injury as shareholders of that company. And they obviously couldn't—if anything, shareholders in Matrix's parent company would *benefit* from anticompetitive measures that increased its profits.

When a plaintiff is not a participant in the relevant market, it can establish antitrust standing only if its injury is "inextricably intertwined with the injury the conspirators sought to inflict on . . . the . . . market." *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1341 (11th Cir. 2017) (quoting *Blue Shield of Va. v. McCready*, 457 U.S. 465, 484 (1982)). An injury meets this standard if it is "a necessary component of the alleged anticompetitive purpose." *See Mr. Furniture Warehouse, Inc. v. Barclays Am./Com. Inc.*, 919 F.2d 1517, 1521 (11th Cir. 1990); *see also McCready*, 457 U.S. 465 at 479. It is not enough that the injury is "'secondary' to the goal of reduced competition" or a mere "effect" of the anticompetitive behavior. *Feldman*, 849 F.3d at 1341 (quoting *Nat'l Indep. Theatre Exhibitors, Inc. v. Buena Vista Distrib. Co.*, 748 F.2d 602, 608 (11th Cir. 1984)).

The sellers maintain that their contractual right to an earnout payment, which was allegedly affected by Matrix's output reduction, is "inextricably intertwined" with the harm that Matrix's

anticompetitive conduct caused to the market. We disagree. Matrix's failure to meet the profit threshold that would trigger the earnout is at most an incidental "effect" of the alleged anticompetitive behavior. This "earnout" injury is not a "necessary component" of Matrix's alleged anticompetitive purpose; the company could have failed to meet the earnout threshold without committing anticompetitive conduct, or it could have met the earnout threshold while committing anticompetitive conduct. This kind of tenuous connection between a plaintiff's injury and the injury to the market is not enough to establish a nonmarket participant's antitrust standing. *See id.*; *see also McDonald v. Johnson & Johnson*, 722 F2d 1370 (8th Cir. 1983) (no antitrust injury when buyer of company did not meet seller's earnout threshold).

## IV.

The district court is **AFFIRMED.**