[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-12151

_____

DANIEL KORDASH,

Plaintiff-Appellant

*versus*

UNITED STATES OF AMERICA,
Attorney General of the United States,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-24257-KMM

_____

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR, and GRANT, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

The issue in this appeal is whether an individual's tort claims against federal officers are barred by determinations in an earlier *Bivens* action. After a series of prolonged airport security screenings, Daniel Kordash filed *Bivens* claims against the Customs and Border Protection officers who detained him. The district court found that the officers had qualified immunity and dismissed the complaint. Kordash then filed a new complaint, under the Federal Tort Claims Act, against the United States for false imprisonment, battery, assault, intentional infliction of emotional distress, and negligence. The district court dismissed the new complaint for failure to state a claim, and Kordash appealed. The government asks us to give preclusive effect, under the doctrine of collateral estoppel, to the determination in the *Bivens* suit that the officers acted lawfully in furtherance of federal policy, on the theory that lawful federal actions are not subject to state-law tort liability under the Supremacy Clause. *Denson v. United States*, 574 F.3d 1318, 1347 (11th Cir. 2009). Because we conclude that collateral estoppel applies, we affirm the dismissal of the complaint.

## I.    BACKGROUND

This appeal is from a dismissal for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), so we accept the allegations of the complaint as true. *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019).

On at least three occasions, Customs and Border Protection officers detained Daniel Kordash, an American businessman who frequently travels abroad, for a secondary security screening at Fort

Lauderdale-Hollywood International Airport or Miami International Airport. First, in September 2017, Customs and Border Protection officers stopped Kordash on his way to Colombia after he falsely reported his currency holdings. Kordash was carrying $33,722 in dollars and the equivalent of $147.16 in Colombian pesos in his luggage, but he had reported in a revised declaration that he carried only $12,000. Alerted by Kordash's revision to his declaration, officers discovered the discrepancy, seized the money, and allegedly "interrogated [him]" "in a freezing cold room" before assessing a fine and releasing him. Next, in February 2018, officers stopped Kordash for a secondary security screening upon his return from Mexico. They allegedly "harass[ed]" him, "seized [his] cell phone," and "warned" him he would always be subject to invasive border searches because of the September 2017 incident. This detention took hours, though the exact duration is disputed. Kordash's complaint alleged that it lasted six hours, but Kordash attached time-stamped government reports that show the duration as two hours, three minutes, and fifty-nine seconds. Last, in November 2018, officers detained Kordash upon his return from Russia for hours of questioning and made further reference to the September 2017 incident.

On a separate occasion in October 2018, Customs and Border Protection officers at Fort Lauderdale-Hollywood International Airport stopped Kordash's friend, a Norwegian citizen named Sara Nilsen who was arriving from Colombia, when officers "learn[ed] that she was there to visit [Kordash]." Officers

detained her at the airport border, insinuated that she was a prostitute, questioned her about Kordash, and told her that Kordash was a money launderer and human trafficker. This incident allegedly "sabotaged" Nilsen and Kordash's relationship.

A month after his November 2018 detention, Kordash filed a *Bivens* claim in the district court against the Customs and Border Protection officers in their individual capacities as "John Does 1–6." *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). The amended complaint alleged that the officers violated Kordash's right to be free from unreasonable searches and seizures under the Fourth Amendment, his right to free association under the First Amendment, and his right to travel under the Fifth Amendment.

The district court dismissed the complaint with prejudice for failure to state a claim. The district court credited the shorter duration of the February detention in the Customs and Border Protection report because it was more "specific" than the allegation of a six-hour detention in Kordash's complaint. *See Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019). And it held that the officers had qualified immunity as to Kordash's *Bivens* claims. Specifically, the district court determined that "it was within the [Customs and Border Protection] Officer[s'] discretionary duty to detain [Kordash] and Nilsen" because the officers acted pursuant to Customs and Border Protection's authority to enforce customs statutes and conduct border searches and that the complaint failed to establish that the officers violated clearly established

constitutional law. The complaint failed to allege a violation of Kordash's Fourth Amendment rights because the officers had reasonable suspicion for at least the first detention and afterward lawfully stopped Kordash in routine detentions that did not require reasonable suspicion. The complaint did not allege a clearly established First Amendment violation because Kordash did not establish he had a constitutionally protected "intimate" relationship with Nilsen. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984). And the complaint did not allege a Fifth Amendment violation because the government may lawfully subject a traveler to airport screening, even extra screening that lasts hours.

Instead of appealing that dismissal, Kordash filed a new action based on the same facts. The new action alleged claims under the Federal Tort Claims Act, which waives the federal government's sovereign immunity for state-law tort claims. *See* 28 U.S.C. §§ 1346(b), 2671 *et seq*. The complaint alleged the torts of false imprisonment, false arrest, assault, battery, intentional infliction of emotional distress, and negligence.

The government moved to dismiss Kordash's complaint for failure to state a claim and for lack of subject matter jurisdiction. It cited the ruling in Kordash's *Bivens* suit, stated that the district court dismissed the claim with prejudice, and argued that the earlier order "controls [the outcome] here." It also addressed the merits of each claim.

The district court dismissed this complaint. It ruled that Kordash "failed to adequately plead facts showing that he was unlawfully or unreasonably detained . . . both of which are required elements of a false imprisonment claim"; failed to overcome the good-faith presumption for government force because "any alleged force used was not 'clearly excessive,'" which barred his battery claim; failed to allege any facts to establish that officers behaved unreasonably or intentionally caused fear, which barred his assault claim; and failed to overcome the discretionary-function exception under the Federal Tort Claims Act, which jurisdictionally foreclosed his claims for intentional infliction of emotional distress and negligence. The district court did not address the doctrine of collateral estoppel.

## II.    STANDARD OF REVIEW

We review *de novo* a dismissal for failure to state a claim. *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1339 (11th Cir. 2017).

## III.    DISCUSSION

The Supremacy Clause enshrines the basic principle that federal law supersedes state law whenever they conflict. *Hillsborough Cnty. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 712–13 (1985); *see* U.S. Const. art. VI, cl. 2. This principle applies not only to direct clashes between federal and state constitutions or statutes but also to suits under state law against federal officials carrying out their executive duties. *See In re Neagle*, 135 U.S. 1, 75 (1890). That is, where state-law liability "stands as an obstacle to the accomplishment and execution of the full purposes and

objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941), liability against a federal officer may not arise, because "[a]n act cannot simultaneously be necessary to the execution of a duty under the laws of the United States and an offense to the laws of a state," *Denson*, 574 F.3d at 1347.

We addressed this issue at length in *Denson v. United States*, in which we upheld the dismissal of an air traveler's *Bivens* and tort claims arising from an extended border detention at customs when she arrived in the United States. *See id.* at 1323. We concluded that the traveler's *Bivens* claims failed because the Customs and Border Protection officers who detained her "acted reasonably and thus, did not violate the Fourth Amendment." *Id.* at 1344. As a result, the traveler's tort claims necessarily failed. *Id.* at 1347–49. As we explained, the inquiry that determines if the Supremacy Clause bars state-law liability is whether a federal official's acts "have some nexus with furthering federal policy and can reasonably be characterized as complying with the full range of federal law." *Id.* at 1348; *see also id.* at 1347 (deriving this test from *In re Neagle*, 135 U.S. at 57). Because the Customs and Border Protection officers' actions bore "a substantial relation to the valid and preeminent federal interests of protecting our international borders, and, while carrying out their lawfully defined duties, they complied with the full spectrum of federal statutory, regulatory, and constitutional law," they satisfied this test. So, the government in *Denson* could not be held liable under state law for the officers' alleged torts. *Id.* at 1348.

The only difference between *Denson* and Kordash's litigation is that Kordash split his claims into two lawsuits instead of joining them into one. The district court in Kordash's *Bivens* lawsuit concluded that the Customs and Border Protection officers who detained Kordash acted lawfully to further federal policy. It determined that there was a nexus between their conduct and furthering federal policy when it found that "[the officers] were acting within the scope of their discretionary duty" because "[a]t the national border, including airports, [Customs and Border Protection] officers are charged with enforcing immigration and customs statutes and regulations." And it determined that the officers' conduct complied with federal law when it concluded that the alleged detentions were permitted by the Fourth Amendment. As the district court explained, "[the officers] had reasonable suspicion to search [Kordash's] bag and detain him . . ." during the first detention, and the latter two searches lasted "less than three hours," which meant that they were routine border searches that did not require reasonable suspicion. *See United States v. Flores-Montano*, 541 U.S. 149, 155 n.3 (2004). And the district court found that Kordash failed to establish that the officers violated the First and Fifth Amendments, too. All these determinations, taken together, satisfy the *Denson* test for the bar to tort liability under the Supremacy Clause.

The government now urges us to give preclusive effect to these earlier determinations under the doctrine of collateral estoppel. That doctrine "bars 'successive litigation of an issue of

fact or law actually litigated and resolved in a valid court determination essential to the prior judgment.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine,* 532 U.S. 742, 748–49 (2001)). We apply collateral estoppel when the following four conditions are met:

> (1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior suit; (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1318 (11th Cir. 2012).

All four conditions for collateral estoppel are met here. First, the issue in this case—whether the officers' acts had a "nexus" with furthering federal policy and complied with federal law, *Denson*, 574 F.3d at 1348—is identical to an issue in the *Bivens* action. In the *Bivens* action, the district court determined for each incident when Kordash or Nilsen were stopped whether the officers acted within their discretionary authority and whether the detentions complied with federal law. Here, the same legal inquiries govern the application of the Supremacy Clause as a bar to liability for claims arising out of these incidents under the Federal Tort Claims Act. Second, those issues were actually litigated in the *Bivens* suit. *See* Restatement (Second) of Judgments § 27 cmt. d (Am. L. Inst. 1982)

(an issue is actually litigated if it was properly raised, submitted for determination, and determined). Third, the determination that the officers had qualified immunity because they acted within their discretion and did not violate federal law was necessary to the dismissal of Kordash's *Bivens* claims. Fourth, Kordash had a fair opportunity to litigate these issues because he brought the earlier *Bivens* lawsuit and raised the subject of the constitutional violations himself. So, Kordash is barred from relitigating these issues under the doctrine of collateral estoppel.

## IV.    CONCLUSION

We **AFFIRM** the dismissal of Kordash's complaint.