SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**In the Matter of Rutgers v. AFSCME Local 888** (A-46-24) (090230)

**Argued October 20, 2025 -- Decided January 29, 2026**

**JUSTICE FASCIALE, writing for a unanimous Court.**

In this appeal, the Court considers whether the grievance procedure in a collective negotiation agreement (CNA) between Rutgers University and Local Union No. 888 conflicts with -- and is therefore preempted by -- the federal Title IX Regulations promulgated in 2020 by the U.S. Department of Education (DOE).

As a recipient of federal education funding, Rutgers is subject to Title IX. In May 2020, the DOE promulgated its Title IX Regulations, which address sexual harassment as a form of sex discrimination. Later that year, Rutgers adopted a Title IX Policy that included a grievance procedure compliant with the Regulations. In February 2022, Rutgers initiated a grievance procedure pursuant to its Title IX Policy after a custodian, "Jane," filed a complaint against her co-worker, J.M. Following the investigation and hearing, the Title IX decision-makers determined that J.M. violated two provisions of the Title IX Policy and that just cause existed for terminating his employment, a determination upheld on appeal.

Local 888 filed a grievance pursuant to its 2019 CNA with Rutgers, requesting a meeting to determine if J.M. was terminated for just cause. Rutgers denied the meeting request on the ground that the Title IX Regulations preempt the CNA's grievance procedure. Local 888 submitted a request for arbitration to the Public Employment Relations Commission (PERC), asserting Rutgers violated Article 4 of the CNA. Rutgers asked PERC to restrain arbitration because the Regulations preempted a review of the disciplinary sanctions under the CNA. PERC denied Rutgers' request and, applying state preemption law, held that the Title IX Regulations did not preempt the arbitration. Rutgers appealed, and the Appellate Division affirmed. The Court granted certification. 260 N.J. 222 (2025).

**HELD:** The CNA's grievance procedure conflicts with -- and is thus preempted by -- the Title IX Regulations because 34 C.F.R. § 106.45(b) mandates that any grievance procedures beyond those specified in that section "must apply equally to both" the alleged victim and the alleged harasser, but the CNA's arbitration process excludes the alleged victim.

1

1.  Because Title IX and its Regulations are federal laws, federal preemption law applies in this case.  Any state law that conflicts with federal law is without effect.  Courts presume that the historic police powers of the States are not to be superseded by a Federal Act unless that was the clear and manifest purpose of Congress.  But the presumption against preemption is overcome where the existence of a conflict is clear and manifest.  Regulations of a federal agency are given the same weight and afforded the same presumptions regarding preemption as federal statutes, and they have no less pre-emptive effect than federal statutes.  (pp. 11-14)

2.  The Court reviews the 2020 Title IX Regulations.  Most relevant to this matter is Section 106.45(b)(8), which governs grievance appeals.  Under that section, "[a] recipient must offer both parties an appeal from a determination regarding responsibility" on several specified grounds.  34 C.F.R. § 106.45(b)(8)(i).  The recipient may offer an appeal on additional bases and any additional appeal must apply "equally to both parties."  Id. at (ii) (emphasis added).  (pp. 15-17)

3.  The Court reviews the CNA's grievance procedure, which has four steps.  In the first three steps, the employee, a Rutgers representative, and a Union representative meet and discuss the grievance.  The Rutgers representative then issues a written answer.  If, after Steps 1 through 3, the Union is "not satisfied with the written decisions of the Rutgers representative," the Union may proceed to Step 4 and "submit the grievance to binding arbitration."  (pp. 17-19)

4.  The Title IX Regulations and their preamble expressly reinforce conflict preemption, and the grievance process they prescribe is not just a pre-disciplinary process; rather, the Regulations cover both pre-disciplinary and post-disciplinary matters.  When a party appeals from any determination, the Regulations require that both parties have equal procedural rights in the ensuing appeal.  Here, Local 888's requested arbitration does not allow for equal participation by Jane and J.M.  Under the CNA, the alleged victim has no rights in the arbitration process, whereas the alleged sexual harasser has rights in the post-termination arbitration.  That inequality conflicts with the mandate that the grievance process apply equally to both parties.  See 34 C.F.R. § 106.45(b).  When such a conflict exists, state law must yield to federal law.  The Court's holding is limited to this particular CNA, which can be renegotiated to bring it into compliance with Title IX.  (pp. 19-25)

**REVERSED.**

**CHIEF JUSTICE RABNER and JUSTICES PIERRE-LOUIS, WAINER APTER, and NORIEGA join in JUSTICE FASCIALE's opinion.  Justices PATTERSON and HOFFMAN did not participate.**

SUPREME COURT OF NEW JERSEY

A-46 September Term 2024

090230

In the Matter of Rutgers,
the State University of
New Jersey,

Petitioner-Appellant,

v.

AFSCME Local 888, American
Federation of State,
County and Municipal
Employees, AFL-CIO,

Respondent-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| October 20, 2025 | January 29, 2026 |

Peter G. Verniero argued the cause for appellant (Sills Cummis & Gross, attorneys; Peter G. Verniero and Michael S. Carucci, of counsel and on the briefs, and Paul Salvatoriello, on the briefs).

Peter B. Paris argued the cause for respondent AFSCME Local 888 (Beckett & Paris, attorneys; Peter B. Paris, on the brief).

John A. Boppert, Deputy General Counsel, argued the cause for respondent New Jersey Public Employment Relations Commission (Christine Lucarelli, General

1

Counsel, attorney; William J. Campbell, IV, Deputy General Counsel, on the brief).

Eve E. Weissman, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; Jeremy M. Feigenbaum, Solicitor General, and Stephen Ehrlich, Deputy Solicitor General, of counsel, and Eve E. Weissman, Liza B. Fleming, and Olivia C. Mendes, Deputy Attorneys General, on the brief).

Richard A. Friedman argued the cause for amicus curiae New Jersey Education Association (Zazzali, attorneys; Raymond M. Baldino, of counsel and on the brief).

Kevin P. McGovern submitted a brief on behalf of amici curiae American Federation of Teachers, Communications Workers of America, Council of New Jersey State College Locals, Local 5094, Health Professionals and Allied Employees, Part-time Lecturer Faculty Chapter, Rutgers Council of AAUP Chapters, and Union of Rutgers Administrators (Weissman & Mintz, attorneys; Kevin P. McGovern, of counsel and on the brief).

JUSTICE FASCIALE delivered the opinion of the Court.

In this appeal, we must determine whether the grievance procedure in a collective negotiation agreement (CNA) between Rutgers University and Local Union No. 888 conflicts with -- and is therefore preempted by -- federal regulations promulgated in 2020 by the U.S. Department of Education (DOE) pursuant to Title IX of the Education Amendments of 1972 (Title IX), 20

2

U.S.C. §§ 1681 to 1689.  We refer to those regulations, codified at 34 C.F.R. §§ 106.1 to .82, as the Title IX Regulations.[1]

We conclude that the CNA's grievance procedure conflicts with the Title IX Regulations because 34 C.F.R. § 106.45(b) mandates that any grievance procedures beyond those specified in that section "must apply equally to both" the alleged victim and the alleged harasser, but the CNA's arbitration process excludes the alleged victim.  Under federal preemption principles, we hold that the Title IX Regulations thus preempt the CNA's arbitration process.  We therefore reverse the judgment of the Appellate Division and the final agency decision of the Public Employment Relations Commission (PERC), which upheld the CNA provision.

---

[1]  The DOE amended the Title IX Regulations in 2024.  89 Fed. Reg. 33474 (Apr. 29, 2024).  However, on January 9, 2025, a federal district court vacated the entirety of the 2024 Amended Regulations, leaving only the original 2020 Regulations in place.  See Tennessee v. Cardona, 762 F. Supp. 3d 615 (E.D. Ky. 2025).  The DOE then issued a Dear Colleague Letter explaining that "no portion of the 2024 Title IX Rule is now in effect in any jurisdiction" and that it would enforce only the 2020 Regulations.  See U.S. Dep't of Educ., Office of Civ. Rgts., Dear Colleague Letter on Title IX Enforcement Directive (Feb. 4, 2025), https://www.ed.gov/media/document/title-ix-enforcement-directive-dcl-109477.pdf.  This opinion therefore analyzes the Regulations as enacted in 2020.  All citations to the Regulations throughout this opinion are to the 2020 Regulations.

3

I.

A.

As a recipient of federal education funding, Rutgers is subject to Title IX.  In May 2020, the DOE promulgated its Title IX Regulations, which address sexual harassment as a form of sex discrimination.  <u>Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance</u>, 85 Fed. Reg. 30026 (May 19, 2020).  Later that year, Rutgers adopted a Title IX Policy that included a grievance procedure compliant with the Title IX Regulations.

In February 2022, Rutgers initiated a grievance procedure pursuant to its Title IX Policy after a female custodian, Jane,[2] filed a complaint against her male co-worker, J.M.  Jane alleged that J.M. physically assaulted her and engaged in a pattern of sexual harassment.

Rutgers investigated the complaint and issued a detailed report of the investigation's findings.  At the subsequent hearing, J.M. declined to select an advisor so Rutgers provided him with outside counsel.  Both Jane and J.M. participated in the hearing.  Following the investigation and hearing, the Title IX decision-makers determined that J.M. violated two provisions of the

_____

[2] This opinion uses the pseudonym "Jane" to protect the complainant's privacy.

University's Title IX Policy as well as the University Policy Prohibiting Discrimination and Harassment.  Accordingly, the decision-makers determined that just cause existed for terminating J.M.'s employment.

J.M. appealed on the grounds of procedural irregularity, new information, and bias.  His appeal was unsuccessful.  In September 2022, he received a letter of termination effective immediately.

B.

In response to J.M.'s termination, Local 888 -- the collective negotiations representative for certain Rutgers employees, including both Jane and J.M. -- filed a grievance on behalf of J.M., challenging his termination and requesting a meeting to determine if J.M. was terminated for just cause, pursuant to its 2019 CNA with Rutgers.  Rutgers denied Local 888's meeting request on the ground that the Title IX Regulations preempt the CNA's grievance procedure.

In October 2022, Local 888 submitted a request for a panel of arbitrators to PERC, asserting that, by refusing to arbitrate, Rutgers violated Article 4 of the CNA.  Article 4 sets forth a grievance procedure which culminates in binding arbitration before an arbitrator appointed by PERC.  PERC has the authority to "make policy and establish rules and regulations concerning employer-employee relations."  N.J.S.A. 34:13A-5.2.  PERC may also

5

determine whether a matter in dispute is within the scope of collective negotiations.  Id. at -5.4(d).  That determination may be appealed to the Appellate Division.  Ibid.

Following Local 888's request for arbitration, Rutgers asked PERC to restrain arbitration because the Title IX Regulations preempted a review of the disciplinary sanctions under the CNA's grievance procedure.  PERC denied Rutgers' request and, applying state preemption law, held that the Title IX Regulations did not preempt the post-disciplinary grievance arbitration as a matter of law.

Rutgers appealed PERC's decision to the Appellate Division, arguing that the Title IX Regulations have a preemptive effect and that arbitration is precluded because the grievance arbitration conflicts with the federal regulations.

The appellate court affirmed PERC's decision and held that Local 888's request for arbitration, on behalf of J.M., is not preempted by the Title IX Regulations.  The Appellate Division determined that no explicit Regulation preempted Rutgers' Title IX Policy relating to sanctions, noting that its "reading [of] the Title IX Regulations together fail[ed] to demonstrate a preemptive intention or conflict precluding Local 888's independent grievance procedure under the CNA."  It also found that the grievance arbitration would

6

not negate the Title IX grievance process because the grievance arbitration is "limited to challenging J.M.'s discharge." The appellate court acknowledged that Jane would not be a party to arbitration, but nonetheless determined that she would not be denied an opportunity to be considered in the arbitration because Rutgers could ensure that her "interests are weighed and introduce relevant evidence for the arbitrator's consideration." The appellate court also explained that if Jane was unhappy with the Title IX decision, Local 888 could file a CNA grievance, such as a hostile work environment grievance, on her behalf.

We granted the petition for certification filed by Rutgers. 260 N.J. 222 (2025). We also granted leave to participate as amici curiae to the New Jersey Education Association (NJEA), the American Federation of Teachers (the Federation of Teachers),[3] and the Attorney General.

## II.

## A.

Rutgers argues that the Title IX Regulations both expressly and impliedly preempt the CNA grievance arbitration. It cites Section 106.6(h) of

---

[3] "The Federation of Teachers" collectively refers to the American Federation of Teachers, Communications Workers of America, Council of New Jersey State College Locals, Local 5094 Health Professionals and Allied Employees, Part-time Lecturer Faculty Chapter, Rutgers Council of AAUP Chapters, and the Union of Rutgers Administrators.

the 2020 Regulations, entitled "Preemptive effect," which states that to the extent of a conflict between state law and the Regulations, the obligation to comply with the Regulations is not obviated by any state law. It claims the Title IX Regulations and the CNA conflict because the victim would not be a party to the arbitration requested under Article 4 of the CNA and the arbitration therefore would not "apply equally" to the victim and accused as required by Section 106.45(b). Further, Rutgers argues that the Appellate Division's pre-discipline versus post-discipline distinction is misplaced because the preemptive effect of the Title IX Regulations covers the entire sexual harassment grievance process. Rutgers maintains that the disciplinary sanctions are an integral part of the Title IX process and thus must apply equally to both parties.

## B.

Local 888 and PERC argue that we should afford substantial deference to PERC's expertise in the area of scope of negotiations and that New Jersey preemption law, not federal preemption law, governs. They claim that the Title IX Regulations govern only the pre-discipline review of sanctions under a CNA, and therefore the Title IX Regulations and the CNA do not conflict. Local 888 contends that since Rutgers' Title IX policy requires that employee discipline be consistent with terms of any collective negotiation agreement, the

8

university has effectively "conceded that any discipline imposed through the Title IX process upon a Local 888 member would be subject to appeal through the contractual grievance procedure" set forth in Article 4 of the CNA. PERC further argues that arbitration would not diminish the Title IX rights of complainants because the Regulations are effectively incorporated by reference as terms of the CNA.

C.

The amici participating in this case all argue that Title IX does not preempt the CNA.

NJEA contends that the DOE contemplated that Title IX grievance procedures would coexist with labor arbitration and that Title IX's goals are accomplished so long as a complainant has been provided a "supportive environment" for presenting a grievance and the grievance process guarantees due process rights.

The Federation of Teachers argues that Rutgers' own Title IX Policy reflects the pre- versus post-discipline distinction because the policy states that discipline should be consistent with CNAs. The Federation of Teachers contends that if this Court concludes that the federal regulations preempt the grievance arbitration, workers who are protected under collective negotiations would lose their right to appeal major discipline and participate in arbitration.

9

Finally, the Attorney General contends that the Employer-Employee Relations Act (EERA), which governs CNAs in New Jersey, protects public employees and therefore falls within a historic area of the State's police power, such that a strong presumption against preemption applies. The Attorney General maintains that the Title IX Regulations and CNA arbitration do not conflict because the Regulations only address procedures to appeal a determination of responsibility and are silent as to appeals of a disciplinary determination. Because the Regulations govern only the pre-discipline grievance process, the Attorney General argues, the grievance arbitration should not be considered additional "provisions, rules, or practices" that must apply equally to both parties.

III.

A.

PERC has jurisdiction to determine "whether a matter in dispute is within the scope of collective negotiations." In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 16 (2020) (quoting N.J.S.A. 34:13A-5.4(d)). Appellate review of an administrative agency's action within its sphere of influence is generally limited. See City of Jersey City v. Jersey City Police Officers Benevolent Ass'n, 154 N.J. 555, 567 (1998).

10

But when, as here, the PERC decision at issue hinges on an interpretation of a statute or a determination of "a strictly legal issue," such as the preemptive effect of federal law, we review its determination de novo. Ridgefield Park, 244 N.J. at 17 (quoting Saccone v. Bd. of Trs., PFRS, 219 N.J. 369, 380 (2014)); accord In re Alleged Failure of Altice USA, Inc., 253 N.J. 406, 415 (2023) ("Preemption determinations are reviewed de novo, as are the issues of statutory interpretation necessary to the preemption inquiry."); In re Reglan Litig., 226 N.J 315, 327-28 (2016) (applying de novo review to determine "whether federal law preempts plaintiffs' state-law action").

B.

We next consider whether federal preemption or state law supplies the proper framework for our analysis of this case. The Appellate Division applied state law scope-of-negotiation analysis when evaluating the preemptive effect of the Title IX Regulations. Local 888 and PERC argue that we should employ the same framework. Rutgers and the Attorney General, however, insist that a proper analysis requires application of federal preemption doctrine.

Because Title IX and its Regulations are federal laws, we must apply federal preemption law to this case. See Martin v. United States, 605 U.S. 395, 409 (2025) ("The Supremacy Clause supplies a rule of decision when federal

11

and state laws conflict" and, when they do, "tells us the state law must yield"); Hager v. M&K Constr., 246 N.J. 1, 27-29 (2021) (applying federal preemption doctrine to determine whether federal law preempted state law).

Although we have previously applied a state preemption test in scope-of-negotiations disputes, those cases dealt with whether a state law preempted a collective negotiating agreement, not whether a federal law preempted a state law or CNA. See Ridgefield Park, 244 N.J. at 17-21 (determining whether state law on health care contributions preempted a CNA); N.J. Tpk. Auth. v. N.J. Tpk. Supervisors Ass'n, 143 N.J. 185, 202-05 (finding state antidiscrimination law did not preempt the statutory authority of a CNA). Those cases did not involve a federal law or regulation like the present case. Thus, we conclude that federal preemption supplies the proper framework for our analysis.[4]

C.

The Supremacy Clause of the United States Constitution provides that federal law "shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. Simply put, "if there is any conflict between federal and state law, federal law

---

[4] We reject PERC's suggestion that its "decades of expertise on the [state] law of preemption in the context of" whether a state law preempts a CNA provision entitles its determination of whether a federal law preempts a CNA provision under the Supremacy Clause of the United States Constitution to deference.

12

shall prevail." Hager, 246 N.J. at 28 (quoting Gonzales v. Raich, 545 U.S. 1, 29 (2005)). And any state law that conflicts with federal law is "without effect." Maryland v. Louisiana, 451 U.S. 725, 746 (1981) (citing McCulloch v. Maryland, 17 U.S. (4 Wheat) 316, 427 (1819) (Marshall, C.J.)).

Congress' intent that federal legislation preempt state law may be expressed directly or implied. Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992). Express preemption occurs when Congress explicitly mandates the preemption of a state law. Brown v. Hotel & Rest. Emps. & Bartenders Int'l Union Loc. 54, 468 U.S. 491, 501 (1984). An express preemption clause "does not immediately end the inquiry," however, "because the question of the substance and scope of Congress' displacement of state law still remains." Altria Grp., Inc. v. Good, 555 U.S. 70, 76 (2008). Thus, reviewing courts must "identify the domain expressly pre-empted" by the clause. Medtronic, Inc. v. Lohr, 518 U.S. 470, 484 (1996) (quoting Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 517 (1992)).

Implied preemption falls into two categories: conflict and field. Id. at 507. Relevant to this case, conflict preemption occurs where "compliance with both federal and state regulations is a physical impossibility." Fla. Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-43 (1963). It may also occur where "state law 'stands as an obstacle to the accomplishment and

13

execution of the full purposes and objectives of Congress.'" Brown, 468 U.S. at 501 (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)). "Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law." Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153 (1982).

At the same time, and "[c]onsistent with the nature of federalism," Ridgefield Park v. N.Y. Susquehanna & W. Ry. Corp., 163 N.J. 446, 453 (2000), we presume that "the historic police powers of the States [are] not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress," Altria Grp., 555 U.S. at 77 (first alteration in original) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). "[T]he presumption [against preemption] is 'overcome,'" for example, "'where . . . the existence of a conflict is clear and manifest.'" Transource Pa., LLC v. Defrank, 156 F.4th 351, 373 (3d Cir. 2025) (quoting Farina v. Nokia, Inc., 625 F.3d 97, 117 (3d Cir. 2010)).

"[R]egulations of a federal agency are given the same weight and afforded the same presumptions regarding preemption as federal statutes," Glukowsky v. Equity One, Inc., 180 N.J. 49, 65 (2004), and they "have no less pre-emptive effect than federal statutes," Fid. Fed. Sav. & Loan Ass'n, 458 U.S. at 153. "A pre-emptive regulation's force does not depend on express

14

congressional authorization to displace state law"; rather, the focus is properly on "whether the [agency] meant to pre-empt" the state law at issue, "and, if so, whether that action is within the scope of the [agency's] delegated authority." Id. at 154.

D.

Title IX prohibits discrimination based on sex in any educational program or activity that receives federal financial assistance. 20 U.S.C. § 1681. It also delegates to "[e]ach Federal department and agency which is empowered to extend Federal financial assistance to any education program or activity" the authority "to effectuate the provisions of [20 U.S.C. § 1681] . . . by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken." Ibid.

In May 2020, the DOE issued several regulations under Title IX. One of the adopted regulations, 34 C.F.R. § 106.45, mandates that recipient schools (i.e., those that accept federal financial assistance) adopt a grievance process to address formal Title IX complaints. This grievance process must comply with the requirements of the Regulations. 34 C.F.R. § 106.45(b); see also id. § 106.44(a). The operative version of Section 106.45(b) reads:

> For the purpose of addressing formal complaints of sexual harassment, a recipient's grievance process must

15

comply with the requirements of this section. Any provisions, rules or practices other than those required by this section that a recipient adopts as part of its grievance process for handling formal complaints of sexual harassment . . . <u>must apply equally to both parties</u>.

[34 C.F.R. § 106.45(b) (emphasis added).]

The Regulations go on to comprehensively outline the mandatory requirements for a recipient's grievance process. 34 C.F.R. § 106.45(b)(1) to (8). The grievance process must "[t]reat complainants and respondents equitably" and "list the possible disciplinary sanctions and remedies that the recipient may implement following any determination of responsibility." <u>Id.</u> at (b)(1)(i), (vi). A recipient's grievance process must also "include the procedures and permissible bases for the complainant and respondent to appeal." <u>Id.</u> at (b)(1)(viii).

Most relevant to this matter is Section 106.45(b)(8), which governs grievance appeals. Under that section, "[a] recipient must offer both parties an appeal from a determination regarding responsibility" on several specified grounds. <u>Id.</u> at (b)(8)(i). The recipient may offer an appeal <u>on additional bases</u> and any additional appeal must apply "equally to both parties." <u>Id.</u> at (b)(8)(ii) (emphasis added). For all appeals, the recipient is required to:

> (A) <u>Notify the other party in writing when an appeal is filed and implement appeal procedures equally for both parties</u>;

16

(B) Ensure that the decision-maker(s) for the appeal is not the same person as the decision-maker(s) that reached the determination regarding responsibility or dismissal, the investigator(s), or the Title IX Coordinator;

(C) Ensure that the decision-maker(s) for the appeal complies with the standards set forth in paragraph (b)(1)(iii) of this section;

(D) Give both parties a reasonable, equal opportunity to submit a written statement in support of, or challenging, the outcome;

(E) Issue a written decision describing the result of the appeal and the rationale for the result; and

(F) Provide the written decision simultaneously to both parties.

[Id. at (b)(8)(iii) (emphases added).]

The Regulations also contain a preemption clause, 34 C.F.R. § 106.6(h). Entitled "Preemptive effect," that provision mandates that, "[t]o the extent of a conflict between State or local law and [T]itle IX . . . the obligation to comply with § . . . 106.45 is not obviated or alleviated by any State or local law."  34 C.F.R. § 106.6(h).

E.

Here, the question is whether Title IX preempts the Article 4 grievance procedure prescribed in the 2019 CNA between Rutgers and Local 888.  To answer this question, we must consider that procedure.  The 2019 CNA

17

requires that Local 888 members not be discharged without just cause, and Article 4 of the agreement sets forth a grievance procedure as "the sole and exclusive remedy for any and all claims pertaining to" the agreement. The agreement defines a grievance as

> any difference or dispute concerning the interpretation, application, or claimed violation of any provision of this Agreement or of any Rutgers policy or an administrative decision relating to wages, hours, or other terms or conditions of employment.

If a Local 888 member has a grievance, the CNA's Article 4 grievance procedure requires that

> [n]o employee shall be discharged, suspended, or disciplined in any way except for just cause. The sole right and remedy of any employee who claims that he or she has been discharged, suspended, or disciplined in any way without just cause shall be to file a grievance through and in accordance with the grievance procedure.

> [(emphases added).]

The grievance procedure has four steps. In the first three steps, the employee, a Rutgers representative, and a Union representative (in progressing levels of seniority) meet and discuss the grievance. The Rutgers representative then issues a written answer to the grievance. If, after following Steps 1 through 3, the Union is "not satisfied with the written decisions of the Rutgers

18

representative," the Union may proceed to Step 4 and "submit the grievance to binding arbitration."

Under the EERA, when a public employer and an exclusive employee representative have a CNA that contains a grievance process for disciplinary actions, such as arbitration, the employer must provide the employee with that arbitration process. N.J.S.A. 34:13A-5.3 ("Grievance and disciplinary review procedures established by agreement between the public employer and the representative organization shall be utilized for any dispute covered by the terms of such agreement."). Accordingly, since Rutgers and Local 888 agreed in the CNA that the union is authorized to submit the grievance to binding arbitration, the parties were required to arbitrate this matter under the EERA. This provision is compulsory unless another statute or regulation preempts the CNA. See N.J. Tpk. Auth., 143 N.J. at 195 (stating that under the EERA "an employer may agree to submit a disciplinary dispute to binding arbitration pursuant to the negotiated disciplinary procedures, provided those procedures neither replace nor are inconsistent with any other statutory remedy" (emphasis added)).

IV.

Applying the federal preemption principles delineated above, we now consider whether the 2020 Title IX Regulations preempt the CNA between

19

Local 888 and Rutgers. We conclude that they do. The Regulations demand equal treatment of Jane and J.M. throughout the grievance proceedings. The CNA's arbitration process fails to meet that mandate. The CNA therefore conflicts with the federal regulations.

The Regulations contain an express regulatory reinforcement of conflict preemption. See 34 C.F.R. § 106.6(h). Entitled "Preemptive effect," that provision mandates that, "the obligation to comply with § . . . 106.45 is not obviated or alleviated by any State or local law" in case of conflict. The DOE clearly intended to displace state law "[t]o the extent of a conflict." Ibid. The preamble to the Regulations provides further clarity, expressly acknowledging the potential for conflict between the Regulations and union contracts, stating that "in the event of an actual conflict between a union contract or practice and the final" rules, the Regulations "have preemptive effect." 85 Fed. Reg. at 30298. See Hillsborough County v. Automated Med. Labs., Inc., 471 U.S. 707, 718 (1985) ("Because agencies normally address problems in a detailed manner and can speak through a variety of means, including . . . preambles, . . . we can expect that they will make their intentions clear."); see also Fid. Fed. Sav. & Loan Ass'n, 458 U.S. at 158 (explaining that an expression of preemptive intent in a regulation's preamble dispels any ambiguity about intent in the regulatory text); Geier v. Am. Honda Motor Co., 529 U.S. 861,

20

884 (2000) (stating that the United States Supreme Court "has never . . . required a specific, formal agency statement identifying conflict in order to conclude that such a conflict in fact exists").

Contrary to the assertions of defendants and amici, Title IX's grievance process is not just a pre-disciplinary process; rather, the Regulations cover both pre-disciplinary and post-disciplinary matters. The Title IX Regulations comprehensively outline the procedures for investigations, hearings, sanctions, remedies, and appeals. See 34 C.F.R. § 106.45(b)(5), (b)(6), (b)(1)(i), (b)(1)(vi), (b)(8). While the Regulations offer a specific basis for appealing a determination regarding responsibility, Sections 106.45(b)(8)(ii) and (iii) discuss all appeals, which include appeals of disciplinary matters, such as the disciplinary matter J.M. and Local 888 wish to arbitrate here.

The Regulations' mandated grievance process was designed to afford equal rights and protections to both alleged victims and alleged harassers. 34 C.F.R. § 106.45(b); see also 85 Fed. Reg. at 30026 ("The final regulations obligate recipients to . . . [implement a] fair grievance process that provides due process protections to alleged victims and alleged perpetrators of sexual harassment. . . ."). This includes providing "the procedures and permissible bases for the complainant and respondent to appeal." 34 C.F.R. § 106.45(b)(1)(viii).

21

The Regulations mandate that an appeal from a determination of responsibility be offered to both parties on certain bases. Id. at (b)(8)(i). Appeals may be offered on additional bases, but here too, the Regulations require that any appeal be offered "equally to both parties." Id. at (b)(8)(ii) (emphasis added). Thus, when a party appeals from any determination, the Regulations require that both parties have equal procedural rights in the ensuing appeal, including ensuring that the other party receives notice of the appeal and is given a "reasonable, equal opportunity to submit a written statement." Id. at (b)(8)(iii)(A), (D), (F).

Here, Local 888's requested arbitration does not allow for equal participation by Jane and J.M. Rather, the CNA treats the two parties differently. Specifically, the arbitration would only involve Rutgers, J.M., and Local 888. Jane would not be a party to the arbitration. This avenue of appeal is therefore not offered equally to both the alleged victim and alleged sexual harasser, conflicting with Section 106.45(b)(8)(ii).

Because she is not a party to the arbitration, Jane would not be notified when an appeal is filed -- a violation of Section 106.45(b)(8)(iii)(A). She would also not have "a reasonable, equal opportunity to submit a written statement" as required by Section 106.45(b)(8)(iii)(D). Allowing the

22

requested arbitration in which Jane has no rights would deny her right to participate equally with the accused harasser as a part of the grievance process.

The Appellate Division asserted that Jane could participate in the arbitration as a witness or through an affidavit and that Rutgers could effectively represent her interests. Although Rutgers and Jane may share some interests, Rutgers is not her functional equivalent. To evaluate whether just cause existed for terminating J.M., the arbitrator will have to consider the alleged misconduct and Jane's allegations. Since Jane is not a party to the arbitration, she is denied her right to present her arguments and allegations to the arbitrator, who will issue a binding determination. She also would not be able to contest the discipline imposed on J.M. This attempted work-around is therefore unsuccessful.

Likewise, the Appellate Division's suggestion that Local 888 could grieve a hostile work environment on Jane's behalf would not resolve the conflict between the CNA and federal regulations in this case. Jane is entitled, under the Title IX Regulations, to have equal access to any appeal processes. A separate arbitration between Rutgers and Jane would not permit her to participate equally in J.M.'s appeal of his termination for just cause. Nor would it allow her to participate in the discussion of sanctions because those two grievances -- one regarding the sanctions imposed on J.M. and the other

23

regarding a hostile work environment allegation -- would be separate and distinct.

Further, the requested arbitration serves as a collateral attack on the Title IX process and defeats the Regulations' objective to ensure that the grievance process treats parties equitably. The DOE explained that because "universities deserve considerable deference as to their . . . disciplinary decisions" and school leaders are "best positioned to make decisions about supportive measures and potential disciplinary measures, . . . the Department will not second guess such decisions" as long as they are made pursuant to the process set forth in the Regulations. 85 Fed. Reg. at 30092, 30096. But here, the arbitrator's conclusion could be directly at odds with the conclusion reached by Rutgers' Title IX decision-makers, who complied with the Title IX Regulations and heard from the complainant. Consequently, the Title IX sanctions may be undone and nullified by a separate process in which the complainant could not equally participate. That is exactly the risk here: Local 888's requested arbitration seeks to change the result of Rutgers' Title IX grievance process through an appeal process that excludes Jane. The CNA arbitration procedure thus "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" as expounded by

24

the authorized agency.  <u>Brown</u>, 468 U.S. at 501 (quoting <u>Hines</u>, 312 U.S. at 67).

Under the CNA, the alleged victim has no rights in the arbitration process, whereas the alleged sexual harasser has rights in the post-termination arbitration.  Those rights are not equal.  This inequality conflicts with Title IX's mandate that the grievance process apply equally to both parties.  When such a conflict exists, state law must yield to federal law.

We therefore hold the CNA conflicts with the 2020 Title IX Regulations, and that, as a result, the federal regulations preempt the CNA's arbitration process between Local 888 and Rutgers.  We note that the Regulations do not preempt every union grievance process; our holding is limited to this particular CNA.  Rutgers and Local 888 may renegotiate the CNA to bring it into compliance with Title IX.

V.

In a battle between conflicting state law and federal law, the Supremacy Clause provides a simple resolution:  federal law controls.  A contrary state law must yield to its federal counterpart.  Here, the CNA between Local 888 and Rutgers conflicts with Title IX's mandatory grievance procedure for recipient institutions.  The conflict arises because the CNA's grievance arbitration is not available to the complainant and thus violates Section

25

106.45's mandate that a recipient's grievance process, including appeals, apply equally to both parties. Due to this conflict, the federal regulations preempt the CNA's arbitration process.

The judgment of the Appellate Division is therefore reversed.


CHIEF JUSTICE RABNER and JUSTICES PIERRE-LOUIS, WAINER APTER, and NORIEGA join in JUSTICE FASCIALE's opinion. Justices PATTERSON and HOFFMAN did not participate.

26